HALL, Judge.
This is a suit by a sub-contractor against the general contractor and the owner for a balance amounting to $2,404.72 alleged to be due for additional work performed and additional material furnished by the sub-contractor at the request of the defendants. From a judgment rejecting its demand plaintiff appealed.
The case stems from the refusal of the defendant contractor, Farnsworth & Chambers Co., Inc., to pay plaintiff its cost of replacing a certain pump which the architects and engineers on the project required to be replaced as not conforming to specifications. Plaintiff contended in the trial court that the pump originally installed by it fully complied with the specifications, while the defendants contended otherwise, but the defendant contractor plead as its primary defense a release signed by plaintiff. The district judge, after hearing the testimony of plaintiff’s president, Mr. Bruno, and after considering the correspondence which passed between the various interested parties entertained a motion for dismissal of plaintiff’s case on the ground that plaintiff’s suit was barred by the release. The district judge after hearing argument on the motion, dismissed plaintiff’s suit without ever having reached the other issues presented by the case.
The only question presented for decision is whether the release signed by plaintiff constitutes an estoppel barring plaintiff’s suit. Consideration of this issue involves a consideration of the facts as disclosed by the record.
Farnsworth & Chambers Co., Inc., as the general contractor engaged by The Administrators of The Tulane Educational Fund to construct the Tulane University Center, entered into a written sub-contract with plaintiff whereby plaintiff in consideration of the sub-contract price of $109,000.00 obligated itself to furnish and install all of the plumbing in the University Center in strict accordance with the plans and specifications constituting part of the general contract. These specifications provided that:
“Contractor shall furnish and install one Weil, Yoeman, or approved equal, nonclog duplex sewage ejection pump # t- ‡»
In lieu of the Weil, Yoeman “sewage ejection pump” called for by the specifications, plaintiff proposed to install a Wein-man “sump pump”, and to that end, plaintiff, as required by a provision of the general contract, submitted to Weil & Moses, the project engineers, for their approval, a brochure containing a drawing and necessary descriptive data relative to the proposed substitute pump. After some changes were made, Weil & Moses, stamped the brochure and drawing with their approval; the stamp reading in part as follows:
“This drawing is approved, except for corrections, subject to requirements of plans and specifications * * * »
Upon receiving this approval plaintiff installed the Weinman “sump pump”. It soon developed, however, that the pump was not adequate to handle the job, and by letter dated September 21, 1959 Weil & Moses notified plaintiff to that effect.
Thereafter the following correspondence took place: On October 1, 1959 Weil & Moses notified Curtis & Davis, the project architects, that the pump did not meet contract specifications and would have to be replaced, and by letter dated October 5, 1959 the architects called upon Farnsworth & Chambers Co., Inc., to require plaintiff *513 to replace the "sump pump” with the Weil, Yoeman “sewage ejection pump” called for by the specifications. On October 7, 1959 Farnsworth & Chambers Co., Inc., transmitted to plaintiff copies of the engineers’ letter of October 1, and the architects’ letter of October 5, and called upon plaintiff, in view of those letters, to remove the “sump pump” and replace same with “a sewage ejection pump” which would comply with the plans and specifications. Plaintiff replied on October 15, 1959 stating that it felt the pump installed met the plans and specifications and that the burden of replacement should not fall on it “but will have to be borne by others” and on October 22, 1959 plaintiff wrote Farnsworth & Chambers Co., Inc., that it had ordered a different pump and would replace the old one “under absolute protest as we are certain the responsibility of error remains with others, and at the proper time determination of responsibility will be made legally, as we do not accept this excessive burden placed upon us.” Farnsworth & Chambers Co., Inc., acknowledged receipt of this letter on October 26, 1959 and stated: “We will appreciate every effort to expedíate this replacement as soon as possible.” The pump was replaced by plaintiff sometime thereafter.
By letter dated January 20, 1960 Farns-worth & Chambers Co., Inc., requested plaintiff to transmit its “Final Estimate including all change orders and proposals that have been approved.” On January 25, 1960 plaintiff sent in its Final Estimate which included extras amounting to $4,-666.03 in addition to the original contract price of $109,000.00.
Farnsworth & Chambers Co., Inc., after taking credit for account charges of $44.60 and after disallowance of an item of $58.17 included in plaintiff’s list of extras (which reduced the amount of the extras to $4,563.-26), tendered to plaintiff in final settlement its sight draft dated May 19, 1960 payable to plaintiff’s order for $4,004.46. This draft together with previous payments of $109,-514.20 made a total of $113,563.26 paid by plaintiff, representing the full contract price plus the extras amounting to $4,563.26.
This sight draft included a “Sub-Contract Release” which provided that in consideration of the payment of the total sum of $113,563.26 “for work performed on the Tulane University Center Project 335” Brindell & Bruno, Inc.:
“ * * * does hereby release Farns-worth & Chambers Co., Inc. from any and all claims of every nature arising under or by virtue of said sub-contract. All labor performed and material used under the aforesaid sub-contract has either been fully paid for or will be paid for out of the amount herein receipted for.”
This release was executed for the plaintiff sub-contractor or by its president whose signature was acknowledged before plaintiff’s attorney as notary public.
Further, the endorsement on the back of this sight draft and release provided:
“This sight draft is issued in full payment of the attached account and the payee accepts it as such by endorsement hereon. (If not in agreement with payee’s records return and state difference.)”
Plaintiff endorsed the draft and in due course the amount thereof was paid to it by the drawee bank.
Shortly thereafter, viz. on June 14, 1960, plaintiff demanded payment for $2,404.72 being its alleged cost of replacing the pump, and, upon payment being refused, this suit followed.
Plaintiff contends that the release does not operate as a bar to this claim for the reason that the pump was replaced by it under a new and separate contract distinct from the sub-contract and the approved change orders. Plaintiff also contends that there was no consideration for the release, since Farnsworth & Chambers Co., Inc., paid the exact amount to the penny which was due under the sub-contract and change *514 orders and gave nothing in addition. Plaintiff further contends that it never intended or consented to release Farnsworth & Chambers Co., Inc., from responsibility for payment of this claim.
In connection with plaintiff’s contention that there was a separate contract covering the installation of the second pump, it is noted that there is nothing whatever in plaintiff’s pleadings which mentions the pump replacement. On the contrary plaintiff’s petition alleges that it performed all of the work and furnished all of the equipment and materials on the plumbing job on the Tulane University Center in strict accordance with the sub-contract of December 28, 1957, and that it “performed additional work and furnished additional materials on said job at the request of defendants for the added sum of $6,923.38,” of which there is still due and owing a balance of $2,404.72.
Furthermore there is nothing in the testimony nor the correspondence which shows any agreement by Farnsworth & Chambers Co., Inc. or anyone else to pay for replacing the “sump pump” and no evidence in the record to show that there was any new, separate or distinct contract with regard thereto. All that the record shows is that Farnsworth & Chambers Co., Inc., transmitted to plaintiff copies of the letters of the architects and engineers rejecting the “sump pump” as not being in accordance with the plans and specifications and called upon plaintiff “in view of the stand taken by the architects and mechanical engineers” to remove the pump and replace same with a sewage ejection pump “which will pass plans and specifications.”
Plaintiff’s contention that the release does not bar this suit because it did not intend to abandon its claim for $2,404.72 is equally untenable. Plaintiff freely and voluntarily accepted the sight draft in full payment and executed a release covering “any and all claims of every nature arising under or by virtue of said sub-contract” for “work performed on the Tulane University Center Project 335.” The pump replacement clearly arose out of the sub-contract and was work performed on the University Center Project.
Nor can we agree with plaintiff’s contention that the release was not supported by consideration because the draft covered only the amount which Farnsworth & Chambers Co., Inc., admitted to be due.
“The fact that defendant’s check was for an amount admitted to be due does not prevent its acceptance — when tendered with the stipulation that the payment constituted a full settlement— from constituting an accord and satisfaction.” Mall Tool Co. v. Poulan, La. App., 40 So.2d 512. See also Berger v. Quintero, 170 La. 37, 127 So. 356; Whitlock v. Veith, La.App., 83 So.2d 148; Meyers v. Acme Homestead Ass’n, 18 La.App. 697, 138 So. 443; Davis-Wood Lumber Co., Inc. v. Farnsworth & Co., Inc., La.App., 171 So. 622; Thompson v. Stacy, La.App., 148 So. 2d 834.
Only one of the cases cited in plaintiff’s brief touched upon the issue involved in this appeal. In that case, Lumberman’s Mutual Casualty Co. v. Bell, 289 F.2d 124, the United States Circuit Court of Appeal for the Fifth Circuit held that the record contained sufficient evidence to justify findings on the part of the jury that plaintiff in signing a release of his personal injury claim against a public liability insurer did not know what he was signing and was entirely ignorant until he filed suit that he had signed such a release, same having been presented to him for signature included in a mass of other papers in connection with the compromise of his workmen’s compensation claim against his employer. The Court also indicated that it felt his signature had been obtained by fraud. That case has no bearing on the factual situation presented here. Plaintiff in the instant case knew what he was signing and there is no question of sharp practice being involved in any way.
*515 For the foregoing reasons we are of the opinion that the acceptance of the draft in full payment constituted an accord and satisfaction barring plaintiff’s claim against Farnsworth & Chambers Co., Inc. (See Davis-Wood Lumber Co., Inc. v. Farnsworth & Co., Inc. and the other cases cited supra) and that the judgment of the District Court dismissing plaintiff’s suit as to both Farnsworth & Chambers Co., Inc. and the Administrators of the Tulane Educational Fund is correct
The general contractor not being liable, there can be no claim against the owner, there being no proof of any contractual relations between plaintiff and the owner.
The plea of estoppel, or accord and satisfaction, was heard and decided by the District Judge in advance of a general hearing on the merits, apparently by consent of counsel. Plaintiff has made no complaint that it was not accorded full opportunity to present its defense against the plea.
The judgment appealed from is affirmed.
Affirmed.