230 So.2d 302 (1969)
LINDA MERCANTILE CORPORATION
v.
Roy B. BOWERS.
No. 7816.
Court of Appeal of Louisiana, First Circuit.
December 22, 1969.
Rehearing Denied February 2, 1970.
Writ Refused April 3, 1970.
P. Wray, Jr., of Wray, Simmons & Robinson, Baton Rouge, for appellant.
*303 Carmack M. Blackmon and Walton J. Barnes, Baton Rouge, for appellee.
Before LANDRY, SARTAIN and ELLIS, JJ.
LANDRY, Judge.
Defendant appeals the judgment of the trial court awarding Linda Mercantile Corporation the sum of $188.21, and attorney's fees in the amount of $47.00 pursuant to a contract between appellant, Roy B. Bowers, and Joy's Furniture Company, assignor of plaintiff-appellee. The sole issue before us is whether sufficient dispute existed between the litigants to support application of the principle of accord and satisfaction when appellant tendered a check in a lesser amount than that called for in the contract and marked "account in full", which check was cashed by plaintiff's assignor. We hold that the trial court erred in finding no dispute existed as to the amount due under the contract.
It is conceded that defendant and Joy's entered into a contract on June 3, 1967. The agreement provided that in consideration of defendant paying the sum of $245.44, Joy's agreed to furnish all material and labor for three items, namely: (1) a slipcover for a daybed and also two bolsters as accessories thereto; (2) reupholstering a wing back chair, and (3) replacing foam rubber cushions of a sofa with spring units. Also admitted in the fact that the agreement was made with William A. Domke, a sales agent of Joy's.
Appellant testified the work, excepting that performed on the chair, was totally unsatisfactory as of the date of the trial. He stated that Joy's Mr. Domke was aware the skirt on the daybed was to be pleated to match other furniture in defendant's home. Appellant also stated that upon return of the articles, the wing chair was found to have been properly done but that the skirt on the daybed slipcover was too short and was "ruffled" instead of being pleated and did not "match" other furniture having pleated slipcovers as contemplated. Appellant concedes further efforts on Joy's part made the slipcover the proper length but even after three or four attempts by Joy's, it was never correctly pleated to give the desired tailored effect. In addition, appellant related the sofa cushions were not provided with springs as agreed. In this latter regard he testified that upon delivery, the sofa cushions were found to be stuffed with new foam rubber instead of springs as called for in the contract. Appellant stated he was advised by a representative of Joy's that there was insufficient material on the sofa cushions to permit using springs in them and any attempt to stretch the fabric might cause it to split. Appellant also stated he did not agree to the change and when usage showed the foam cushions sagged, he requested Joy's to remove the new foam rubber padding and replace it with the original padding. Additionally, appellant testified that after repeated complaints to Domke and other employees of Joy's, he became convinced the work would never be done satisfactorily. Upon so concluding, defendant returned the slipcover and bolsters to Joy's and left them there without discussing the matter with any employee of the store. Defendant also stated that in a telephone conversation with Joy's manager, Arthur D. Ross, he declared his intention to pay for the chair only and conveyed the same information to an unnamed employee in Joy's accounting department. Defendant
testified further that after the foregoing occurrences, he forwarded Joy's a check in the sum of $69.50, marked "account in full", as he recalled this amount to be the portion of the contract price allotted to the work on the wing back chair in the discussion which preceded the signing of the contract.
It suffices to state that Mrs. Bowers corroborated the testimony of her husband. Her testimony is in effect that her dissatisfaction with the daybed and sofa cushions were well known to Joy's.
Mr. William A. Domke, a salesman for Joy's, stated it was Joy's policy to unconditionally *304 guarantee workmanship and customer satisfaction. Domke explained that defendant complained only of the daybed skirt being too short which condition was remedied by ordering additional material and increasing the skirt to proper length. Domke denied having received any other complaints but knew the slipcover and bolsters had been returned. Mr. Domke admitted discussing a price itemization with defendant when the contract was signed but denied that $69.50 was the agreed price of the work to be done on the chair. Additionally, Domke stated Mrs. Bowers approved substitution of new foam rubber for springs in the sofa cushions.
Joy's manager, Arthur D. Ross, testified he was aware of the return of the slipcover and bolsters and that difficulty was experienced in collecting the contract price from defendant. He conceded some fourteen or fifteen collection letters had been written without results. Ross also stated he requested Bowers by telephone to come to the store to discuss the matter. He denied discussing with defendant the matter of price itemization or any diminution in price.
Fredda Arthurs, Joy's Credit Manager, testified that she never discussed the matter with defendant. She also stated she sent numerous collection letters to defendants and received no reply. She acknowledged receiving defendant's check dated October 26, 1967, in the sum of $69.50, marked "account in full." She stated further the notation mentioned caused her to discuss the matter with Mr. Ross. Subsequently she crossed out the notation and deposited it to Joy's account.
John F. Packard, Manager, Joy's reupholstering department, testified in essence that he corrected all deficiencies in workmanship on the Bowers' furniture and considered that all work was properly performed.
On the foregoing evidence the trial court granted plaintiff judgment on the ground that acceptance of the check for $69.50, bearing the notation "account in full", did not constitute the basis for an accord and satisfaction. In so holding, the court correctly noted the three indispensable elements of accord and satisfaction are (1) an unliquidated or disputed claim; (2) a tender by the debtor, and (3) an acceptance by the creditor. However, the lower court also held there was no underlying dispute as to the amount owed inasmuch as the contract admittedly was for the certain, liquidated and express price of $245.44. The trial court reasoned there was a dispute only as to the standard of performance called for by the contract, consequently the claim was liquidated and there was no dispute as to the amount due.
Appellant contends the trial court erred in (1) holding there was no dispute as to the "amount" owed; (2) finding that accord and satisfaction occurs only when the parties discuss the amount involved; (3) concluding accord and satisfaction cannot result when the debtor pays a disputed claim by a return of merchandise accompanied by a check notated "account in full"; (4) holding the debt in question was liquidated, and (5) declining to sustain defendant's plea of failure of consideration.
It is essential to a resolution of the legal questions involved herein to consider the elements of the doctrine of accord and satisfaction when dealing with part payment of obligation by a check marked "payment in full", "account in full", or other similar language conveying the intent of the debtor to discharge the obligation in its entirety. In Corbin on Contracts, § 1279 at page 1046, we note the elements are excellently stated and explained as follows:
"Where the amount due is in dispute, and the debtor send cash or check for less than the amount claimed, clearly expressing his intention that it is sent as a settlement in full, and not on account or in part payment, the retention and use of the money or the cashing of the check is almost always held to be an acceptance of the offer operating as full satisfaction, even though the creditor may assert *305 or send word to the debtor that the sum is received only in part payment. The creditor's action in such case is quite inconsistent with his words. It may, indeed, be clear that he does not in fact assent to the offer made by the debtor, so that there is no actual `meeting of the minds.' But this is merely another illustration of the fact that the making of a contract frequently does not require such an actual meeting. This has been discussed in the chapters on offer and acceptance and interpretation. The court is in these cases faced with the alternative between holding that the creditor is a wrongdoer in cashing the check or using the money, and holding that his conduct is operative as an acceptance and is therefore not wrongful. The latter holding is a short cut to complete justice, protects the debtor against injury, and prevents unnecessary litigation. It is true that the creditor may bring suit for the balance claimed; but he loses his case and is taxed with the costs. If the contrary rule were adopted, the creditor would get judgment for such balance as he can prove; and the debtor would have to support a counter action, or a counterclaim in the same action, for damages for the creditor's wrongful retention of the money or check. It has seemed to the courts more beneficial to hold that the creditor's action speaks louder than his words and is operative as an acceptance of the offer as made."
The doctrine of accord and satisfaction is unknown to our statutory law. However, the principle was incorporated into our jurisprudence by the Supreme Court of Louisiana in Berger v. Quintero, 170 La. 37, 127 So. 356. In the cited case, the court applied the principle of accord and satisfaction to an instance in which an attorney, upon receiving a client's proceeds from litigation, made a statement of amount due his firm for services rendered and mailed a statement showing the balance due the client together with a check for the remainder. The client retained the check for three years and caused it to be certified by a bank. The facts recounted in the decision do not disclose any discussion or communication between the parties.
We also note the cases of Geo. L. Ducros Tile Co. v. Frey Homes, La.App., 65 So.2d 621 (involving a check), and Brindell-Bruno, Inc. v. Farnsworth and Chambers Co., La.App., 154 So.2d 511 (involving a sight draft), wherein the mere cashing of the instruments, with adequate notation thereon of payment in full with some indication of an accounting, was sufficient to support discharge of the entire obligation by accord and satisfaction. In both of these cases the only evidence of dispute regarding amount due was the annotated document tendered in payment.
We note that in Pontchartrain Park Homes v. Sewerage & Water Board, 246 La. 893, 168 So.2d 595, our Supreme Court set out the elements of accord and satisfaction as follows:
"In order to maintain a plea of estoppel based on the doctrine of accord and satisfaction there must be present: (1) an unliquidated or a disputed claim; (2) a tender by the debtor; and (3) an acceptance of the tender by the creditor."
In Aronson v. Pailet, La.App., 173 So. 545, the court found that the creditor receiving part payment by check knew he disagreed with the sum tendered by virtue of his repeated attempts to contact the debtor. The court concluded this unilateral knowledge of the disagreement constituted a dispute as to amount due and held that the doctrine of accord and satisfaction applied when the creditor cashed the check.
In Braudaway v. United Equitable Insurance Company, La.App., 208 So.2d 359, and Davis-Wood Lumber Co., Inc. v. Farnsworth & Co., La.App., 171 So. 622, accord and satisfaction was predicated on the finding of a dispute as to amount due where the checks involved were marked only "account in full" and the dispute as to amount was shown by evidence outside of the checks.
*306 We note that in both the common law and our own jurisprudence, it has also been held that a dispute which does not specifically concern the amount due, but rather involves the question of how the debt is to be liquidated, is nevertheless sufficient basis for applying the doctrine of accord and satisfaction. See Gottlieb v. Charles Scribner's Sons, 232 Ala. 33, 166 So. 685 (1936), Mall Tool Co. v. Poulan, 40 So.2d 512 (Second Circuit, La.App., 1949).
The clear tenor of the jurisprudence is that a pre-existing dispute as to the amount due is an indispensable prerequisite to application of the doctrine of accord and satisfaction. It is equally well settled that even though the consideration for an obligation is liquidated and certain, such as a contract to build a house for $15,000.00, nevertheless a dispute as to the amount due may form the basis of an accord and satisfaction. Thus in Davis-Wood Lumber Co. v. Farnsworth & Co., La.App., 171 So. 622, it was held that a dispute concerning interpretation of the terms of a contract, which affected the stipulated contract price for pilings, was sufficient dispute to invoke the doctrine of accord and satisfaction.
In the case at bar the trial court erred in holding that where the contract price is certain and specific, there can be no dispute as to the claim, consequently the lack of the indispensable element of dispute prevents invocation of accord and satisfaction. In so holding, the lower court erroneously equated an agreed initial contract price to a liquidated and undisputed claim. The fallacy of this position is that notwithstanding the contract price may be fixed and certain, there may nevertheless be a dispute as to the amount owed due to subsequent events which affect the degree and extent of the parties' liability under the contract.
We are of the opinion that to distinguish between a dispute as to the amount due, and a dispute as to performance or any other such aspect of a contract which must necessarily affect the amount due, is a distinction without a difference. Stated otherwise, we specifically hold that a dispute as to any aspect of a transaction which necessarily affects the amount due is a dispute as to the amount due.
Such a dispute, however, must be reasonable and bona fide under the circumstances of each particular case. In this instance we find there was an honest, reasonable, and bona fide dispute as to quality of work involved which engendered a dispute as to the amount due.
Unquestionably the creditor must have knowledge, actual or imputed, of the existence of a dispute regarding the amount due. It is not necessary, however, that there be haggling over a fixed contract price to either constitute a dispute or impute knowledge thereof to the creditor. It suffices that actual knowledge be shown or circumstances demonstrated from which knowledge may reasonably be inferred. Here Joy's well knew of defendant's dissatisfaction with most of the work and that the slipcovers and bolsters had been returned. These circumstances and other attending events, such as defendant's utter disregard of numerous collection letters sent by Joy's, are sufficient to impute to Joy's knowledge that defendant disputed the amount due and had no intention of paying the full contract price.
We find no merit in plaintiff's contention that since the disagreement, if any, did not involve the whole claim, accord and satisfaction is inapplicable herein. It appears the majority of jurisdictions hold to the contrary as evidenced by the following appearing in Williston on Contracts, § 129, at pages 176-177, wherein we find the following:
"Not infrequently though a claim is unliquidated or the subject of a bona fide and reasonable dispute, it is conceded that, at least, a certain amount is due. It might seem that in paying this conceded part of the claim or any lesser amount, the debtor was merely doing what he was previously bound to do, and *307 that, therefore, the payment would not be valid consideration. The majority, however, looks at an unliquidated or disputed claim, as a whole, and so looking at it does not attempt to set a value upon it, or to define the extent of the debtor's legal obligation."
The check in question, marked "account in full", was cashed by the creditor knowing the amount to be in dispute, consequently we find all elements of accord and satisfaction present. We find: (1) there was a dispute as to the amount due and owing: (2) the dispute was honest, reasonable, and bona fide; (3) the creditor was aware of the dispute; (4) the debtor tendered a check annotated "account in full", and (5) the creditor accepted the tender by cashing the check.
The foregoing conclusions eliminate the necessity of passing upon defendant's alternative defense of failure of consideration.
It is ordered, adjudged and decreed the judgment of the trial court in favor of plaintiff, Linda Mercantile Corporation, and against defendant, Roy B. Bowers, be and the same is hereby reversed and set aside and judgment rendered rejecting and dismissing said plaintiff's demands at plaintiff's cost.
Reversed and rendered.